## COMMONWEALTH vs. WILLIAM SARGENT.

Worcester. February 12, 1987. — August 31, 1987.

Present: GREANEY, C.J., GRANT, & PERRETTA, JJ.

*Motor Vehicle,* Operating under the influence. *Evidence,* Blood alcohol test, Intoxication, Hearsay, Hospital record.

At the trial of a complaint charging the defendant, who had been injured in a motorcycle accident, with operating a motor vehicle while under the influence of intoxicating liquor, there was no error in the admission in evidence pursuant to G. L. c. 233, § 79, of the defendant's hospital record containing the results of an alcohol test of the defendant's blood neither ordered by a physician nor used in treating the defendant, where the test was conducted by the hospital as "normal procedure" on every "trauma patient" and the results included in the hospital record to assist medical personnel in diagnosis or treatment. [660-661]

COMPLAINT received and sworn to in the Clinton Division of the District Court Department on January 24, 1986.

On transfer to the jury session of the Fitchburg Division, the case was tried before *Austin T. Philbin,* J.

*Alice J. Klein* for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. About 5:30 P.M., on April 13, 1985, the defendant, with a friend riding tandem, was driving his motorcycle on Route 12 in Sterling. A portion of that roadway was being repaired, and the travel lanes were divided by "Jersey" barriers. Such barriers are made of cement and are reinforced with steel rods. The evidence is unclear as to the exact sequence and cause of the events, but the defendant and his friend were thrown from the motorcycle. The friend escaped serious injury, but the defendant landed on the barrier on his abdomen, impaled by a protruding steel rod. After the police and medical assistance arrived on the scene, the defendant was taken by helicopter

to the University of Massachusetts Medical Center. Upon his admission to the hospital and prior to surgery, a blood alcohol analysis was performed and revealed a blood alcohol reading of .149. This reading was admitted in evidence at the defendant's trial on a complaint charging him with operating a motor vehicle while under the influence of intoxicating liquor. On appeal, the defendant argues that it was error to admit the blood alcohol reading in evidence pursuant to G. L. c. 233, § 79, the medical records exception to the rule against hearsay evidence, because the blood alcohol analysis test was neither requested nor used by the defendant's physician in treating him. We affirm the conviction.

I. *The Medical Evidence.*

Dr. Wayne Silver, a surgeon, testified that he treated the defendant for his accident injuries in the emergency room, the operating room and the intensive care unit. Although he neither ordered the blood alcohol analysis test nor used the test results in treating the defendant, such a test is conducted, as "normal procedure," on every "trauma patient." More specifically, the test "is a standard screening piece of information that may or may not be important in determining a diagnostic plan or a therapeutic treatment."

Based upon the defendant's blood alcohol level at the time of the tests (ninety minutes after his arrival at the hospital), Dr. Silver estimated that he would have to have had three drinks. Had the defendant had only one drink prior to the time of the test, the reading, as estimated by Dr. Silver, would have been .04. Dr. Silver's estimates were based upon his understanding that it "takes eight hours to totally clear alcohol" from one's system.

As described by Dr. F. John Krolikowski, a forensic pathologist in charge of the hospital's clinical chemistry laboratory, several tests of the defendant's blood were conducted. The here-disputed blood alcohol analysis is a serum test performed with an "ACA analyzer". The machine is maintained on a daily basis, and to insure the accuracy of the readings, three calibrations are done to check the "linearity of the analysis". Dr. Krolikowski testified that the serum alcohol

reading differs from a blood alcohol reading. By mathematical conversion, a .149 serum alcohol reading converts to a .13 blood alcohol level.[1]

To contradict the Commonwealth's medical evidence, the defendant presented Patrick Demers, a forensic chemist with fifteen years of experience in blood alcohol analysis. In Mr. Demers' expert opinion, there were inherent problems with the analysis relied upon by the Commonwealth. In the first instance, he explained, serum alcohol readings are higher than whole blood alcohol levels. That is to say, the "serum portion of the blood contains, on a per unit basis, more alcohol per unit volume than whole blood." According to his calculations, the .149 blood serum reading would "correlate to a whole blood figure of about a .12." Further, Mr. Demers expressed doubt as to the reliability of the defendant's reading. Even though the machine may have been maintained appropriately and its calibrations checked for accuracy, the test of the defendant's blood was conducted only once. Although one test might be sufficient for medical purposes, "[i]n science, in order to assess a degree of reliability, a confidence limit, a test must be done in independent duplicate at least twice and come up with substantially the same result twice in a row."

In Mr. Demers' opinion, for the defendant to have a .12 reading in "whole blood terms," he would have to have had eleven drinks. That opinion was based upon the following. "The defendant fits the normal male profile. It would take six drinks residual in the system to give that reading . . . and a person would burn off just slightly less than one of those drinks per hour. So that for each hour you'd be safe to add one drink for each hour prior to the taking of the [blood] sample that a person had been drinking." Thus, the defendant would have

---

[1] "By statute, if the percentage of alcohol in a defendant's blood is .10 or more, there is a presumption that such defendant was under the influence of intoxicating liquor. G. L. c. 90, § 24(1)(e)." *Commonwealth* v. *Riley,* 22 Mass. App. Ct. 698, 699 n.1 (1986).

to have had eleven drinks within the six hours immediately preceding the test.[2]

II. *The Medical Records Exception.*

Under G. L. c. 233, § 79, as amended through St. 1974, c. 225, "[r]ecords kept by hospitals . . . under [G. L. c. 111, § 70] shall be admissible . . . as evidence . . . so far as such records relate to the treatment and medical history of such cases . . . but nothing therein contained shall be admissible as evidence which has reference to the question of liability." The statute has been liberally construed, see *Commonwealth* v. *Franks,* 359 Mass. 577, 579 (1971), and its justification as an exception to the rule against hearsay evidence is fully explained in *Bouchie* v. *Murray,* 376 Mass. 524 (1978).

It is one of the defendant's contentions that the exception is not here applicable because, as earlier noted, Dr. Silver neither requested nor used the blood alcohol analysis in treating him. Compare *Commonwealth* v. *Riley,* 22 Mass. App. Ct. 698, 700 (1986), where the defendant's treating physician ordered a blood test "[i]n order properly to evaluate the cause of the defendant's condition before commencing treatment." The defendant's claim finds no support in the express language of the statute, which requires only that the "records relate to the treatment." Further, the gloss given the statute by the defendant is inconsistent with our decisional law. See, e.g., *Leonard* v. *Boston Elev. Ry.,* 234 Mass. 480, 483 (1920); *Bouchie* v. *Murray,* 376 Mass. at 530-531; *Commonwealth* v. *Perry,* 385 Mass. 639, 641-642 (1982); *Commonwealth* v. *Gogan,* 389 Mass. 255, 263-264 (1983); *Commonwealth* v. *Dunne,* 394 Mass. 10, 17 (1985). These cases show that the defendant's argument must fail. "If the subject matter of an entry falls within those areas which, under hospital practices, are regarded as relevant to diagnosis or treatment, it is within the statute." *Commonwealth* v. *Perry,* 385 Mass. at 642, citing *Bouchie* v. *Murray,* 376 Mass. at 530-531. Based upon the testimony of Dr. Silver and Dr. Krolikowski explaining the

---

[2] The defendant testified that, on April 13, 1985, he had two drinks, coffee brandy and milk, the first at about 1:30 P.M., and the second well over an hour later.

routine practice of the hospital and the reason for that standard procedure, we see no error in the judge's ruling that the entry concerning the defendant's blood alcohol analysis was within the scope of G. L. c. 233, § 79.

"[I]n a prosecution for operating a motor vehicle while under the influence of intoxicating liquor, the Commonwealth must prove beyond a reasonable doubt that the defendant's consumption of alcohol diminished the defendant's *ability* to operate a motor vehicle safely" (emphasis original). *Commonwealth* v. *Connolly,* 394 Mass. 169, 173 (1985). The defendant argues that the Commonwealth should not be allowed to satisfy this burden by presenting evidence which is "primarily" hearsay, that is, the result of the blood alcohol analysis. Verdicts and judgments can be based upon hearsay evidence. See *Commonwealth* v. *Foley,* 358 Mass. 233, 237 (1970); *Commonwealth* v. *Frisino,* 21 Mass. App. Ct. 551, 553 (1986). The hearsay evidence in the present case was admissible because of its reliability. "[I]t was made in circumstances which indicate that its inclusion in the hospital record was for the purpose of assisting medical personnel in diagnosis and treatment." *Bouchie* v. *Murray,* 376 Mass. at 531. Moreover, even were the test result the only evidence offered by the Commonwealth to show that the defendant had consumed liquor recently,[3] it would have been sufficient to put the case to the jury. See *Commonwealth* v. *Moreira,* 385 Mass. 792, 795 (1982). See also *Commonwealth* v. *Marley,* 396 Mass. 433, 442 (1985).

There is no force to the defendant's argument that use of the hospital records deprived him of the "procedural safeguards" set out in G. L. c. 90, § 24(1)(*e*), as in effect prior to St. 1986, c. 620, § 11. The defendant finds these safeguards in the final sentence of the statute[4] which he reads to mean

---

[3] The complaining officer testified that, as he was attempting to assist the defendant, who was screaming and struggling against the barrier, he (the officer) detected a strong odor of alcohol on the defendant's breath and a redness to his eyes. A medical attendant at the scene of the accident testified that she also noticed a strong smell of alcohol on the defendant's breath.

[4] "A certificate, signed and sworn to, by a chemist of the department of public safety or by a chemist of a laboratory certified by said department, which contains the results of an analysis made by such chemist of the

that "unsigned test records from uncertified laboratories do not rise to the level of prima facie evidence." He contends that, where the laboratory is certified and the testing chemist identified, the degree of accuracy in the testing is enhanced and the right to confront the chemist is protected. In the absence of these safeguards, he concludes, test results should not constitute prima facie evidence. In view of the previously described testimony and the judge's pertinent instructions to the jury,[5] we think it unnecessary to comment upon the claim.

*Judgment affirmed.*

---

percentage of alcohol in such blood shall be prima facie evidence of the percentage of alcohol in such blood."

[5] "The reading in no way dictates the conclusion that the defendant was under the influence of intoxicating liquor. It is only evidence from which fair inferences by you, if you choose, may be drawn and which you may consider with all of the other evidence in determining whether the defendant was indeed under the influence of intoxicating liquor . . . . [I]n order to do that, you must be convinced beyond a reasonable doubt that the test administered to the defendant in this case was scientifically accurate and properly and competently administered and then and only then do you even get to the question of whether you can consider the reading."