COMMONWEALTH *vs.* SCOTT RUSSO. No. 90-P-714. March 21, 1991. *Motor Vehicle*, Citation for violation of motor vehicle law, Operating under the influence. *Practice, Criminal*, Citation for violation of motor vehicle law, Required finding. *Constitutional Law*, Search and seizure, Evidence obtained by private party. *Search and Seizure*, State action, Consent. *Evidence*, Blood alcohol test, Intoxication, Hospital record, Expert opinion, Cross-examination, Bias. *Witness*, Expert, Bias.

Taking the evidence in a light most favorable to the Commonwealth, the jury of six that convicted the defendant Russo of operating a motor vehicle while under the influence of intoxicating liquor and driving to endanger, could have found the following. Russo, when he collided virtually head-on with another car at 3 A.M. on May 8, 1988, was in the wrong lane. Police from Newton who arrived on the scene found Russo trapped in his automobile, conscious, responsive, and agitated. "Get me out of this fucking car," he shouted at the officers. It required "jaws of life" so to do. Odor of alcohol emanated from his breath. At the hospital, to which he was removed for treatment of a broken leg, broken arm, and face lacerations he was combative, but oriented about place and circumstances. A serum blood test yielded a blood alcohol level of .198 percent, with possible levels of .191 to .201 percent if a standard margin of error were considered. By statute, a presumption of intoxication arises at .10 percent. G. L. c. 90, § 24.

In his appeal, Russo challenges four rulings of the District Court judge who presided over the jury trial: (1) the denial of a motion to dismiss by reason of the failure of the police to serve Russo promptly with a citation of motor vehicle law infraction; (2) denial of a motion to strike hospital records; (3) limiting the scope of cross-examination bearing on the bias of a witness; and (4) denial of a motion for a required finding of not guilty and denial of a motion to set aside the jury verdict. We affirm.

(1) *Compliance with G. L. c. 90C, § 2, which requires a copy of the citation of a motor vehicle offense to be delivered to the accused at the time and place of the violation.* About one hour after the accident, two officers, one of them bearing a citation to Russo of his motor vehicle law violations (see G. L. c. 90C, § 1), came to the emergency room at Newton-Wellesley Hospital. They found Russo lying on a hospital gurney (a wheeled stretcher), eyes open and apparently aware. The officers explained the charges on the citation form to Russo and tucked the copy for the offender[1] in some of Russo's clothing, which had been folded and placed on a shelf underneath the gurney platform on which he was stretched out. Russo said nothing but, according to one of the officers, "he looked at us and nodded."

When circumstances do not permit giving the offender a citation at the time and place of violation, the police must draw up the citation "as soon as possible after such violation" and mail or deliver it to the defendant. G. L. c. 90C, § 2, as appearing in St. 1985, c. 794, § 3. The defendant does not deny that the accident scene was sufficiently chaotic (the driver of the other car was trapped in his vehicle) and concern for the injuries of the accident victims sufficiently paramount that handing out citations was not, reasonably, a first order of business. What the defendant quarrels with is whether the police complied with the delivery prescription of the statute when they presented the citation to Russo in the hospital emergency room.

This aspect of the case is controlled by *Commonwealth* v. *Perry*, 15 Mass. App. Ct. 281 (1983). We there observed that the dual objectives of G. L. c. 90C, § 2, are to prevent corrupt manipulation of traffic tickets (i.e., a "no fix" system) and early notice to the offender about the violation being charged. *Id.* at 283. See also *Commonwealth* v. *Pappas*, 384 Mass. 428, 431 (1981); *Commonwealth* v. *Provost*, 12 Mass. App. Ct. 479, 483 (1983). Placing the citation with the defendant's clothes on the hospital gurney satisfied the first objective (copies were presumably filed with the chief, the clerk-magistrate, and so forth). As to the notice component, the judge who ruled on the motion to dismiss could believe that the police

---

[1] The citations are bound in a citation book and consecutively numbered. Each citation has multiple copies, one of which is given to the offender, one which the issuing officer retains, one which the police chief retains, and the remainder which are sent to the clerk-magistrate of the appropriate District Court. When the violator pays the prescribed fine or if there is other adjudication (as there was here), a copy is sent to the Registrar of Motor Vehicles.

officers had made the defendant aware of the charges against him and that the citation had been delivered. In any event, a criminal complaint issued within a month, so little time was lost before Russo had documentary notice of the charges against him.[2]

The requirements of § 2 are flexibly applied when the offense, as here, is serious. *Commonwealth* v. *Pappas*, 384 Mass. at 431-432. *Commonwealth* v. *Perry*, 15 Mass. App. Ct. at 284. *Commonwealth* v. *Barbuto*, 22 Mass. App. Ct. 941, 943-944 (1986). The goals of the statute were "not thwarted" and "flaws of detail in its observance can be overlooked." *Perry*, *supra* at 284. An "important feature of the statutory arrangements was [not] flouted through sloth or sheer inattention." *Id*. at 283. Contrast *Commonwealth* v. *Marchand*, 18 Mass. App. Ct. 932, 933 (1984). If there was a violation of the statute at all — by no means a compelled conclusion on the evidence — it was in the forgivable category.

2. *Admissibility of the blood test.* Blood was drawn from Russo by medical personnel at the hospital in connection with his treatment. The police did not request or direct testing of the defendant's blood. In that setting, drawing and testing the blood did not implicate the protection against unreasonable search and seizure of the Fourth Amendment to the United States Constitution. Extraction of blood without a person's consent may constitute an unreasonable search, *Schmerber* v. *California*, 384 U.S. 757, 767 (1966), but only when it is done at government direction. *District Attorney for the Plymouth Dist.* v. *Coffey*, 386 Mass. 218, 220-221 (1982). *Commonwealth* v. *Storella*, 6 Mass. App. Ct. 310, 314-315 (1978). Here, even if one were to assume that the blood sample had been given involuntarily, there was no government direction. Contrast *Commonwealth* v. *Angivoni*, 383 Mass. 30, 32 (1981), in which police requested that blood be drawn to test for alcohol level.

Russo next challenges admission of so much of his medical records from Newton-Wellesley Hospital, under G. L. c. 233, § 79, as disclosed his high blood alcohol level, on the ground that the prosecution had not established that his blood had been drawn and tested in connection with his diagnosis and treatment. In *Commonwealth* v. *Sargent*, 24 Mass. App. Ct. 657, 660-661 (1987), we held that there need be no showing that blood tests are related to specific treatment or diagnostic inquiry if there was evidence that blood tests are standard procedure in the hospital for the sort of medical problem presented. See also *Commonwealth* v. *Riley*, 22 Mass. App. Ct. 698, 700-701 (1986). Two physicians testified in *Sargent* that blood tests were standard procedure and explained why. Russo attempts to avoid the bearing of the *Sargent* case by pointing to the absence in his case of similar testimony. What Russo asserts is missing, however, is in the

---

[2]Actually the record is silent as to whether Russo, while at the hospital, found or had called to his attention by other than the police officers the citation placed with his clothing. Russo did not testify.

hospital record itself. Examination of it reveals a battery of blood tests, identified in the record as "routine chemistry" including blood type (in the event transfusion were required), blood gases, antibody screens (should there be wound infection), and blood cultures. There are urine tests and an electrocardiogram. It is obvious that Russo received a full "work up."

Russo's counsel also claims to have been surprised by the government's offer of his hospital record. Whether an objection on that ground was made is less than clear from the record. The principal controversy at trial seemed to be over whether the record should go in evidence in its entirety, be sanitized to some degree, or be admitted in part. In any event, the contention is puzzling. Since the defendant had been in the hospital, his lawyer would have known there was a medical record and the record was as accessible to defense counsel as it was to the government.

This does not exhaust the arguments by which the defendant resists the force of the medical record evidence. He argues that the chain of custody of the blood sample and the identity of the person performing the test were not established, thereby undermining the reliability of the record. Requiring confirmatory evidence of that sort, however, would subvert the purpose of G. L. c. 233, § 79: to spare hospital personnel the burden of spending time in court to verify what is recorded as matter of professional routine and to accord a presumption of reliability to records whose accuracy is relied upon in the treatment of patients. *Bouchie* v. *Murray*, 376 Mass. 524, 527-528 (1978). Still working the same vein, the defendant challenges the qualifications of a State chemist to interpret the blood test results. The qualification of a witness to testify as an expert rests in the sound discretion of the judge. *Commonwealth* v. *Haas*, 373 Mass. 545, 563 (1977), *S.C.*, 398 Mass. 806 (1986). *Commonwealth* v. *Schulze*, 14 Mass. App. Ct. 343, 347-348 (1982). That discretion was nowise abused. The government's witness had worked for five years in the toxicology laboratory of the Department of Public Safety. There was no serious doubt of his ability to translate for lay persons the technical language within the record.

3. *Limitation on cross-examination as to bias.* During cross-examination of Michael Joyce, the owner of the other car in the collision, defense counsel asked Joyce if his cousin, Daniel Mahon, had filed a suit against Russo for personal injuries sustained in the accident. Joyce had entrusted the driving to Mahon because Mahon had ingested less alcohol than he. The judge excluded the question. There was no error. Parties may have reasonable cross-examination to demonstrate the bias of a witness giving evidence. *Commonwealth* v. *Koulouris*, 406 Mass. 281, 285 (1989). Such cross-examination was allowed in this case. Defense counsel explored the friendly relationship between Joyce and Mahon. When the tendency of evidence to show bias becomes attenuated, the trial judge may intervene. *Commonwealth* v. *Gonzalez*, 23 Mass. App. Ct. 913, 914 (1986).

4. *Sufficiency of the evidence.* Extended discussion is not necessary to dispose of the contention that there was insufficient evidence to support the

verdicts and that the defendant was entitled to required findings of not guilty or, failing that, to a setting aside of the verdicts. We have set out facts the jury could have found at the beginning of this opinion. Among the items of evidence which warranted those findings was evidence as to the position of the cars, Joyce's testimony that the Russo vehicle was on the wrong side of the road, observations of the police officers, the odor of liquor on Russo's breath, and the blood test. This evidence easily satisfied the test of *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979).

*Judgments affirmed.*

*Barbara C. Johnson* for the defendant.
*Miranda S. Jones*, Assistant District Attorney, for the Commonwealth.