## COMMONWEALTH vs. GLEN ST. HILAIRE.

No. 96-P-1948.

Middlesex. September 25, 1997. - November 4, 1997.

Present: WARNER, C.J., GILLERMAN, & GREENBERG, JJ.

*Probable Cause. Protective Custody. Search and Seizure,* Probable cause, Arrest, Blood sample. *Intoxication. Motor Vehicle,* Operating under the influence. *Arrest. Evidence,* Blood sample. *Practice, Criminal,* Sentence. *Words,* "Incapacitated."

The record of a hearing on a motion to suppress evidence supported the judge's finding that, at the time the defendant was taken into protective custody after a serious automobile accident in which the defendant and others were injured, he was intoxicated and likely to suffer physical harm because he was unable to care for himself, and supported his conclusion that police officers properly acted in accordance with their responsibility under G. L. c. 111B, § 8. [746-748]

Where a person was taken into protective custody upon probable cause to conclude he was intoxicated, that he was restrained for his own safety did not constitute an unlawful arrest. [748-749]

A physician's medical decision to draw blood without consent from an injured and intoxicated person who was under protective custody in a hospital emergency room was not State action and did not constitute an unlawful search and seizure. [749-750]

At the trial of an indictment alleging operation of a motor vehicle recklessly or negligently while under the influence of intoxicating liquor in violation of G. L. c. 90, § 24L, the judge properly admitted in evidence, under G. L. c. 233, § 79, a portion of a hospital record disclosing the results of a blood alcohol test taken for medical reasons at a hospital where the defendant was treated after an automobile accident. [750]

Where sentencing guidelines have not been enacted pursuant to the mandate of St. 1993, c. 432, § 5, there could be no argument that a judge erred in sentencing a criminal defendant by exceeding the sentencing guidelines. [750]

INDICTMENT found and returned in the Superior Court Department on November 16, 1994.

A pretrial motion to dismiss or, in the alternative, to suppress evidence was heard by *Stephen E. Neel,* J., and the case was tried before *Regina L. Quinlan,* J.

*Joseph J. Balliro* for the defendant.

*Stephen C. Hoctor*, Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. The defendant was the operator of an automobile involved in a head-on collision on Route 20 in Marlborough on July 2, 1994, at 4:30 P.M. The passenger in the defendant's car was critically injured in the accident. An elderly couple in the second vehicle also suffered serious injuries.

On November 16, 1994, a Middlesex County grand jury returned an indictment against the defendant charging him with operating a motor vehicle recklessly or negligently and while under the influence of intoxicating liquor, so that the lives or safety of the public might be endangered. See G. L. c. 90, § 24L.[1]

The defendant filed a motion to dismiss the indictment or in the alternative to suppress evidence of blood alcohol testing. The motion was denied, and subsequently the defendant was found guilty on the indictment.[2] He filed a timely notice of appeal from his conviction, and he appealed his sentence to the Appellate Division of the Superior Court. That appeal was dismissed. The correctness of the denial of the suppression motion, and an evidentiary ruling at the trial, are before us, as is the validity of the defendant's sentence.

1. *The motion to suppress.* The motion judge made detailed findings of fact and rulings of law. Absent clear error, we accept his findings, and we grant substantial deference to his conclusions of law. *Commonwealth* v. *Motta*, 424 Mass. 117, 121 (1997). The material facts found by the judge are these.

Officer Brewster investigated the accident scene. He observed the extensive damage to the front ends of both vehicles, and the extensive damage to the interior of the defendant's vehicle. It appeared to Brewster that the defendant had hit his steering

---

[1]A second indictment charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor, fifth offense, see G. L. c. 90, § 24, was dismissed by the trial judge, after a guilty finding, as duplicative of the first indictment.

[2]After his conviction, but prior to sentencing, the defendant renewed his motion to dismiss based on the trial testimony. The trial judge denied the motion without prejudice in order to permit the defendant "to bring a formal motion before [the motion judge]." The record appendix does not disclose any rehearing before the motion judge, and the defendant's brief does not refer us to any such rehearing. Thus, we decide the motion to suppress on the basis of the evidence before the motion judge exclusive of any evidence at the trial.

wheel and dashboard with great force. He also saw a beer can on the driver's side of the defendant's vehicle, and numerous cans of beer in the back seat.[3]

Ambulance and fire personnel who had arrived at the scene asked for Brewster's assistance. Brewster joined them, and saw the defendant being placed on a stretcher. A medical technician told Brewster that the defendant might have suffered neck injuries, that he should be evaluated and treated, and that he was being uncooperative. Brewster observed that the defendant was abusive toward the ambulance personnel, and he smelled a strong odor of alcohol from the defendant's breath. Brewster reasonably suspected, the judge found, that the defendant was intoxicated.

Brewster then handcuffed the defendant (hands in front), and placed him in protective custody.[4] See G. L. c. 111B, § 8.[5] He did so, the judge found, "[i]n view of defendant's potentially serious injuries, his refusal to be treated, his lack of physical restraint and his intoxication [in consequence of which] Officer Brewster concluded that the defendant was in danger and unable to care for himself."

The defendant was transported to the Marlborough Hospital where he was examined by Wayne Chin, M.D. Dr. Chin observed that the defendant was intoxicated, was not cooperative, and was not speaking sensibly. He suspected that the

---

[3]There was no finding as to whether the beer cans were empty or unopened.

[4]Brewster testified that the rules and regulations of the police department of Marlborough require that individuals placed under protective custody or arrest must be handcuffed.

[5]General Laws c. 111B, § 8, provides, in part, that "[a]ny person who is incapacitated may be assisted by a police officer *with or without his consent* to his residence, *to a facility* or to a police station. . . . A person . . . held in protective custody by the police . . . shall not be considered to have been arrested or to have been charged with any crime" (emphasis added). "Facility" is defined in § 3 of c. 111B: "any public or private place, or portion thereof, providing services especially designed for the detoxification of intoxicated persons or alcoholics." Given the advice of a medical technician that the defendant, who had been involved in a head-on automobile collision, might have suffered a neck injury and was in need of evaluation and treatment, and that the police detected a strong odor of alcohol from the defendent's breath, the police were justified in transporting the defendant to a hospital where the defendant could be both detoxified ("the metabolic process by which toxic qualities of a poison or toxin are reduced in the body," American Heritage Dictionary, 3d ed.) and receive the necessary medical attention. In those circumstances the hospital was a "facility" within the meaning of § 3.

defendant might have suffered subdural or epidural brain injury, or diffuse axonal injury (swelling of the brain), and he was concerned about possible internal bleeding. Dr. Chin was concerned that without surgical intervention, any of these conditions could be fatal. Dr. Chin told the defendant of the possibility of life-threatening injuries; the defendant responded with obscenities. Later, a face shield was placed on the defendant to prevent his spitting on the hospital staff.

Dr. Chin was also concerned because brain injuries require that the patient be kept still, particularly that the neck be controlled to prevent paralysis. A neckbrace was applied (while hospital personnel restrained the defendant). The defendant was placed in four point restraints, given several doses of an antipsychotic drug, and became quiet.

Further physical examination revealed abrasions to the defendant's forehead, bruises to his chest, and lacerations to his left knee. In accordance with standard emergency room protocol for a motor vehicle accident victim with multi-organ involvement (head and chest), Dr. Chin ordered that blood be drawn and analyzed. Dr. Chin needed to know the defendant's blood count (in order to determine whether the defendant had lost blood, indicating internal bleeding), and whether alcohol or drugs were present (to determine whether the defendant's behavior was attributable to a head injury or to those substances).

The police officers did not request, influence or participate in Dr. Chin's decision to order that the defendant's blood be drawn and analyzed. Dr. Chin, the judge found, was unaware of the defendant's protective custody status. He was of the opinion that the defendant was not competent to decide whether to allow his blood to be drawn. Time was of the essence, and the decision to draw the defendant's blood was made by Dr. Chin alone. The defendant was released from protective custody after he recovered from his sedation.

On these facts, the judge concluded that there was no violation of law in the drawing of the defendant's blood, and he denied the defendant's motion to suppress the results of the blood test. The defendant argues that the motion judge was wrong for a number of reasons.

First, the defendant argues that his restraint by the police was unlawful at the outset because he was taken into protective custody in violation of G. L. c. 111B, § 8; he argues that there was no finding, and no evidence to support a finding, that the defendant was "incapacitated" within the meaning of the statute.

Section 3 of G. L. c. 111B defines "incapacitated" as "the condition of an intoxicated person who, by reason of the consumption of intoxicating liquor is . . . (2) in need of medical attention, [or] (3) *likely to suffer* or cause *physical harm* or damage property . . ." (emphasis added). The judge made no express finding that the defendant was incapacitated. Nevertheless, the judge found that "[i]n view of defendant's potentially serious injuries, his refusal to be treated, his lack of physical restraint and his intoxication, Officer Brewster concluded that the defendant was in danger and unable to care for himself, and therefore placed defendant in protective custody."

The defendant's intoxication, his need of medical attention, and the danger he presented to himself placed the defendant squarely within the definition of an "incapacitated" person, and provided Brewster with probable cause to believe the defendant was in fact incapacitated and likely to cause harm to himself or others. See *Commonwealth* v. *O'Connor*, 406 Mass. 112, 120 n.6 (1989) (probable cause to believe that a person is incapacitated is ordinarily the standard to be applied in protective custody cases). In making his findings, the judge plainly credited the testimony of Brewster, and implicitly approved his decision to place the defendant in protective custody. We conclude that an express finding that the defendant was incapacitated was not essential because such a finding was inherent in the judge's discussion of the issue.

The defendant argues that the police used the protective custody statute "as a sword in order to confine a cogent, lucid, aware individual against his will [in order to] subject him to a variety of tests and procedures he did not want." There was evidence that the defendant said he did not want treatment, but wanted only to be let alone. To be sure, one generally has the right to refuse medical treatment, see, e.g., G. L. c. 111, § 70E(*h*), and it may be that the defendant was sufficiently lucid to be aware of his condition. But the defendant's protest is not decisive in the context of this case. The defendant's intoxication, the extreme incivility of his conduct, the head-on car collision, the serious injury to others, and the possibility of his own serious injury, all pointed directly to the necessity of temporary police custody in order to avoid further injury.

General Laws c. 111B, § 8, is among those statutes which manifest a legislative intent "to protect private individuals . . . from the harm posed by the intoxicated driver," *Cyran* v. *Ware*,

413 Mass. 452, 458 n.5 (1992), and police officers are in violation of their responsibilities if they fail to remove an intoxicated driver from a public highway. *Ibid.* See also *Commonwealth* v. *O'Connor, supra* at 120 (a police officer who violates his responsibility to take an incapacitated person into custody "risks tort liability for his employer"). In response to the defendant's argument that only the availability of G. L. c. 123, § 12 (ten-day hospitalization for treatment of mentally ill) could justify the defendant's restraint, the judge identified G. L. c. 111B, § 8, as the statute which provided a "legal basis upon which the defendant could have been restrained. . . . [This was so because that statute] authorizes police to use such force as is reasonably necessary to carry out their authorized responsibilities."

General Laws c. 111B, § 8, has withstood a procedural due process challenge, see *Commonwealth* v. *O'Connor,* 406 Mass. at 121, and we see nothing in the record that would justify a finding that the police were acting other than in accordance with the law in taking the defendant into protective custody in order to avoid possible harm to the public and to the defendant.[6]

Second, the defendant argues that he was unlawfully restrained by the police because he was "de facto under arrest at the scene of the accident" and the conditions justifying an arrest were not present. See *Commonwealth* v. *Willis,* 415 Mass. 814, 819-820 (1993). This argument relies principally on the fact that the defendant was placed in handcuffs and, thus, was restricted in movement. The fact that the defendant was placed in handcuffs is not dispositive of the question whether the defendant was arrested. See *Commonwealth* v. *Williams,* 422 Mass. 111, 118 (1996), citing *Commonwealth* v. *Andrews,* 34 Mass. App. Ct. 324, 329 (1993). More to the point is that *Commonwealth* v. *O'Connor,* 406 Mass. at 120 n.7, is decisive as to this issue: "Although the act of placing the defendant in protective custody was a seizure in the constitutional sense, it was not an arrest. Certainly the Legislature did not intend to equate protective custody with an arrest. Section 8 explicitly disclaims such a result ('[a] person . . . held in protective custody . . . shall not be considered to have been arrested or to have been

---

[6]We note that the statute limits the period of protective custody to twelve hours, or shorter if the incapacitation continues for less than twelve hours. Here, as we noted earlier, the defendant was released as soon as he recovered from his antipsychotic medication.

charged with any crime'). Because there was probable cause to conclude the defendant was incapacitated, his seizure was not unreasonable. . . ."

Here, as in *O'Connor*, Brewster had probable cause to believe that the defendant was incapacitated, making his seizure not unreasonable. See *Terry* v. *Ohio*, 392 U.S. 1, 19 (1968) ("[T]he central inquiry under the Fourth Amendment [is] the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security").

Third, the defendant argues that whether or not he was arrested, the police involvement in the drawing of his blood constituted State action, citing *Commonwealth* v. *Storella*, 6 Mass. App. Ct. 310 (1978), and since the drawing of his blood was without his consent, there was an unlawful search and seizure requiring suppression of the test results. See *Commonwealth* v. *Angivoni*, 383 Mass. 30, 32-33 (1981) (taking a blood sample, without justification, is a search and seizure within the meaning of the Fourth Amendment).

The defendant misconstrues *Storella*. There we held that there was no search and seizure for a variety of reasons, chief among which was the fact that the physician who removed the bullet from the defendant's body and turned it over to the police was acting as a private citizen and not as an agent of the State. This was so because the purpose of the operation in *Storella* was medical, not investigatory.

In the case before us, as in *Storella*, the judge found that Dr. Chin's decision to draw the defendant's blood was a medical decision, made as a result of his observations of the defendant's physical condition and his behavior.[7] There is no basis for any finding that Dr. Chin was acting as an agent of the State, there was no State action, and there was no unlawful search and

---

[7]In particular, the judge found that "[w]hile they [the police] did place the defendant in protective custody and help hospital personnel restrain defendant, they did so for the purpose of ensuring that he receive medical treatment, and not for the purpose of drawing the blood sample. The police neither knew whether a blood test would be performed at the time they participated in the restraint of the defendant, nor assisted in the restraint of defendant in order to encourage the extraction of the blood or in exchange for the hospital's assistance. (citation omitted). Therefore, the evidence fails to support a conclusion that the government directly caused the seizure of defendant's blood."

seizure.[8] See *Commonwealth* v. *Russo*, 30 Mass. App. Ct. 923, 925 (1991) (extraction of blood without consent constitutes an unreasonable search only when it is done at the direction of a governmental actor).

2. *The trial.* The defendant argues that the blood test results were obtained from malfunctioning equipment and were erroneously admitted in evidence by the trial judge. At the trial, the defendant introduced evidence — consistent with the ground for his written objection to the introduction of the results of the tests of the defendant's blood — that the machine was malfunctioning at the time the defendant's blood was tested, and that the test results, therefore, were not scientifically reliable. The Commonwealth offered evidence to the contrary.

We need not consider whether the judge made the necessary preliminary finding of reliability, see *Commonwealth* v. *Durning*, 406 Mass. 485, 490 (1990), for in this case — unlike the cases cited by the defendant where the testing occurred at a police station, see, e.g., *Commonwealth* v. *Cochran*, 25 Mass. App. Ct. 260 (1988) — the testing was administered at the Marlborough Hospital, and the results of the tests were recorded in the defendant's hospital record. See *Commonwealth* v. *Dube*, 413 Mass. 570, 572-575 (1992), where the court held that "the admission of the portion of the hospital record disclosing the results of the blood test [to determine blood alcohol content] is permitted under G. L. c. 233, § 79, in the discretion of the trial judge." This is the ground taken by the trial judge, and there was no error.

3. *The sentence.* The defendant argues that the trial judge erred in exceeding the sentencing guidelines. See An Act to Promote the Effective Management of the Criminal Justice System Through Truth in Sentencing, St. 1993, c. 432, § 3 (sentencing commission "shall recommend sentencing guidelines"). However, § 5 of St. 1993, c. 432, provides that "[t]he guidelines shall take effect only if enacted into law [by the Legislature]." The commission's guidelines were not enacted into law when the defendant was sentenced; indeed, as of the date of this opinion, they still have not been enacted into law.

*Judgment affirmed.*

[8]Because Dr. Chin acted only for medical reasons, and therefore was not an agent of the State, the trial evidence that the police held the defendant down while his blood was drawn would not change the result.