Fabricant, Judith, J.
INTRODUCTION AND BACKGROUND
The defendant is charged with operating under the influence of alcohol and related offenses. The incident giving rise to the charges involved a collision in which the defendant was injured, resulting in his hospitalization at Boston Medical Center. The hospital conducted a blood alcohol test, in accord with hospital routine, for purposes of diagnosis and treatment, without any involvement of police. The defendant, according to his affidavit, did not consent to the blood alcohol test.[1] The Commonwealth proposes to put the records of the defendant’s hospitalization in evidence at trial, pursuant to G.L.c. 233, §79G, including the result of the blood alcohol test. Before the Court is the defendant’s motion to exclude the blood test result. For the reasons that will be explained, the defendant’s motion will be denied.
DISCUSSION
General Laws c. 233, §79G, provides for admission in evidence of certified copies of hospital records “so far as such records relate to the treatment and medical history of such cases.” The statute applies to both criminal and civil cases, and makes no distinction according to which party offers the evidence in a criminal case. The statute has been construed repeatedly as authorizing admission in criminal cases of hospital records of blood alcohol testing, and a variety of constitutional and statutory objections to such use have been rejected. See Commonwealth v. Dube, 413 Mass. 570, 574-75 (1992), and cases cited.
Despite these authorities, the defendant contends that the hospital record containing the blood test result is inadmissable because the Commonwealth cannot show that the blood test was conducted by an analyst certified by the Office of Alcohol Testing of the Executive Office of Public Safety, acting in accord with that office’s written laboratory protocol, pursuant to 501 C.M.R. §2.29. That regulation provides that “The Office of Alcohol Testing shall develop and implement a certification program for chemists of the Department of State Police or chemists of a laboratory certified by said Department who perform blood alcohol analysis under G.L.c. 90, §24(l)(e) and (f).” The regulation goes *112 on to provide that “Only a certified analyst may conduct a blood alcohol analysis” under that statute, and that the Office of Alcohol Testing shall “develop a written laboratory protocol for blood alcohol analyses . . . that certified analysts must adhere to in order to conduct a valid blood alcohol analysis which may be offered as prima facie evidence under G.L.c. 90, §24N.”
The statute to which the regulation refers, G.L.c. 90, §24(1), provides in paragraph (e) as follows:
In any prosecution for a violation of paragraph (a), evidence of the percentage, by weight, of alcohol in the defendant’s blood at the time of the alleged offense, as shown by chemical test or analysis of his blood or as indicated by a chemical test or analysis of his breath, shall be admissible and deemed relevant to the determination of the question of whether such defendant was at such time under the influence of intoxicating liquor; provided, however, that if such test or analysis was made by or at the direction of a police officer, it was made with the consent of the defendant, the results thereof were made available to him upon his request and the defendant was afforded a reasonable opportunity, at his request and at his expense, to have another such test or analysis made by a person or physician selected by him; and provided further, that blood shall not be withdrawn from any party for the purpose of such test or analysis except by a physician, registered nurse or certified medical technician ... A certificate, signed and sworn to, by a chemist of the department of state police or by a chemist of a laboratory certified by the department of public health, which contains the results of an analysis made by such chemist of the percentage of alcohol in such blood shall be prima facie evidence of the percentage of alcohol in such blood.
Two other parts of the statute are referred to in the regulation: Section 24(1) (f) relates to implied consent for testing by police, and consequent license suspension upon refusal of testing. Section 24N provides for license suspension upon the issuance of a criminal complaint in certain circumstances, including where the prosecution makes a prima facie showing that the defendant was operating with a blood alcohol level of .08 or greater, by means of a certificate of chemical analysis conducted “in accordance with regulations and standards promulgated by the secretary of public safety.”
The regulation on which the defendant relies directs the Office of Alcohol Testing to establish a certification program for chemists “of the Department of State Police or chemists of a laboratory certified by said department,” and provides that only chemists so certified may conduct analyses “under G.L.c. 90, §24(l)(e) and (f),” and that such certified chemists must adhere to standards “in order to conduct a valid blood alcohol analysis which may be offered as prima facie evidence under . . . §24N.” The defendant reads this language as a limitation on the admissibility of blood test results under the first clause of §24(l)(e). The regulation does not say that, nor, more importantly, does the statute.
Section 24(l)(e) begins with a general, unequivocal statement, appearing in the first clause of the first sentence, that chemical test results are admissible. That statement plainly reflects the legislative policy to prohibit and deter operating under the influence and to facilitate its effective prosecution by fair and rational means, based on objective and reliable information. The general statement of admissibility is subject to two provisos. The first proviso, appearing in the second clause of the first sentence, by its terms sets conditions for testing “by or at the direction of a police officer.” The second proviso is that “blood shall not be withdrawn from any party for the purpose of such test or analysis except by a physician, registered nurse or certified medical technician.” Nothing whatever in the statute authorizes the Secretary of Public Safety to promulgate regulations limiting or conditioning admissibility of test results.
The last sentence of§24(l)(e) does authorize regulation, at least indirectly, by granting prima facie evidence status to certifications of results by personnel certified by the Department of State Police. The question before the Court however, is not prima facie evidence status of anything, but merely admissibility. Compare Commonwealth v. Sargent, 24 Mass.App.Ct. 657, 661-62 (1987) (blood test result in hospital record would have been sufficient to put the case to the jury without other evidence, even though not qualified for “prima facie evidence” status pursuant to the last sentence of G.L.c. 24(l)(e)). Regulations that serve to implement the certification requirements of that sentence have no bearing on the issue presented here. Similarly, this case does not involve a refusal, or license suspension resulting therefrom, nor does it involve a question of prima facie status of any certification of results pursuant to §24N. The only question here is admissibility of the medical record reflecting the result of the blood test. On that point, the regulation has no bearing.
Under the plain terms of the statute, the blood test result in issue here is admissible in evidence. The first clause clearly makes it so, and neither proviso excludes it. The first proviso clearly has no application here, where police had no involvement in the testing.[2] The second proviso, in light of the first, appears similarly limited to circumstances where testing is done “by or at the direction of a police officer.” Even if it applies more generally, however, nothing before the Court suggests that it is not met. That the blood test occurred at Boston Medical Center, a well established public hospital, is in itself sufficient to support the inference that the person who drew the blood was a physician, nurse, or certified technician.[3]
That the statutory and regulatory scheme distinguishes between blood tests conducted at the direc *113 tion of police and those conducted by medical personal for medical purposes reflects the different roles of police and medical personnel in addressing incidents of alleged operating under the influence. Police enforce the law; they investigate, charge and prosecute violations.. When they also initiate or conduct tests to generate evidence for use in such prosecutions, safeguards are needed to insure that prosecutorial zeal does not interfere with the integrity of the test process, and does not compromise the health of the person tested.. Such safeguards are particularly important when the test result in itself, or a refusal to submit to the test, has consequences such as those provided in the last sentence of §24(l)(e), and in §§24(l)(f) and 24N. When testing is done by a hospital, without involvement of law enforcement personnel, in contrast, no prosecutorial motive or incentive is involved. Hospital personnel act solely to serve the interest of the patient’s health. That interest, together with the licensing, regulatory, and accreditation systems that apply to hospitals generally, provides ample safeguard for the patient’s health, and assurance of reliability.[4]
The defendant next argues that the blood test result should be excluded as unreliable pursuant to Commonwealth v. Lanigan, 419 Mass. 14 (1994). Here again he invokes the regulatory standards applicable to tests conducted by police, arguing that these standards establish the test of reliability for blood alcohol testing, so that non-compliance with these standards indicates unreliability. For the reasons already discussed, those standards have no application to blood tests conducted by a hospital, and therefore no bearing on reliability of such tests. As the cases cited supra reflect, hospital blood tests have long been accepted by our courts as reliable, for the same reasons that the legislature has accepted hospital records generally as sufficiently reliable for admission in evidence in both criminal and civil cases: because medical personnel rely on them for diagnosis and treatment. Where a category of evidence has long been accepted as reliable, and the opposing party offers nothing to undermine its reliability in the particular case, no further analysis under Lanigan is required. See Commonwealth v. Frangipane, 433 Mass. 527, 538 (2001) (Lanigan hearing unnecessary “where qualified expert testimony has been accepted as reliable in the past in Massachusetts Appellate cases”).
The defendant further argues ‘that admission of the blood test result would be “fundamentally unfair" to him, because it would deprive him of the procedural safeguards provided by the regulations. As discussed, those regulations do not apply to tests conducted in hospitals for medical purposes, without police involvement. The defendant received the full benefit of all hospital procedures and standards to ensure safe and reliable testing. He is entitled to nothing more.
CONCLUSION AND ORDER
For the reasons stated, the Defendant’s Motion to Exclude Results of Blood Test
Conducted at Boston Medical Center is DENIED.

 The materials before the Court contain nothing on the question of whether the defendant consented to his hospitalization and treatment generally, or whether, in light of his condition, consent was deemed unnecessary or was obtained from his next of kin. The Court does not suggest that this question bears on the issues presented here.

 For that reason, the requirement in the proviso of the defendant’s consent is inapplicable, and the defendant’s claim of lack of consent is irrelevant to admissibility of the test result.

 Hospitals are licensed and comprehensively regulated by the Department of Public Health pursuant to G.L.c. 111, §51. They are also subject to standards established by national accreditation bodies.

 See note 3, supra.