# RESCRIPT OPINIONS.

COMMONWEALTH *vs.* KENNETH ARRUDA. No. 06-P-1872. October 31, 2008. *Constitutional Law,* Self-incrimination, Evidence obtained by private party, State action. *Evidence,* Blood alcohol test. *Motor Vehicle,* Operating under the influence.

This authorized interlocutory appeal by the Commonwealth, see Mass. R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996), presents the question whether the District Court judge correctly concluded that the defendant's refusals, while in police custody, to comply with requests from medical personnel to supply them with a sample of his blood for medical purposes were protected from admission in evidence by the second sentence of G. L. c. 90, § 24(1)(*e*). Concluding that the second sentence pertains to refusals to consent to blood-alcohol testing obtained through State action and that there is nothing in the findings to suggest that the defendant's refusals to the medical personnel were attributable to any request or action by the police,[1] we reverse the judge's order and remand the matter for further proceedings on the complaint charging the defendant with vehicular homicide while operating under the influence of alcohol and causing serious bodily injury while under the influence of alcohol.

1. *The facts.* The defendant filed a pretrial motion in limine by which he sought "an order excluding from evidence any testimony or documentary evidence allegedly purporting to demonstrate that the Defendant failed or otherwise refused to consent to blood alcohol testing." The judge conducted an evidentiary hearing after which he made the following findings.

At about 7:50 P.M. on December 17, 2004, Swansea police Officer Joseph Martin was dispatched to the scene of a motor vehicle accident where he observed the "aftermath of a substantial collision between a Toyota Camry [automobile] and a Dodge Durango [automobile]." The fire department was called to assist in extricating the occupants of the Toyota. The defendant was in the driver's seat of the Dodge, complaining of chest pain. A firefighter advised him to stay in his car until he could be evaluated by medical personnel. The defendant remained in his car, speaking on his cellular telephone.

Officer Martin was standing at the passenger door of the Dodge at the same time the firefighter was speaking to the defendant. Martin detected a strong odor of alcohol emanating from within the car and noted that the defendant's speech "was thick and slurred and that his eyes were glossy [*sic*]." He also saw that the interior of the defendant's vehicle was "intact" and could not "recall any indication of damage to the windshield."

---

[1] The defendant's refusal to comply with a police officer's request that he take a blood-alcohol test is not admissible. See *Opinion of the Justices,* 412 Mass. 1201 (1992).

When medical personnel arrived at the scene, the defendant was placed in an ambulance. Martin stepped into the ambulance long enough to tell the defendant that he was under arrest, to give him his Miranda warnings, and to question him about his alcohol consumption. The defendant informed Martin that he was driving from a Christmas party at which he had consumed three glasses of wine.

Martin followed the ambulance to the hospital where he informed the defendant of his right to take a blood test. See G. L. c. 263, § 5A. Although the defendant initially indicated a willingness to have his blood drawn, he also told Martin that he would not take a "blood alcohol test." Because the defendant was in custody, Martin remained with the defendant in or immediately outside the room in which he was being treated until Martin was relieved by another Swansea police officer who also kept the defendant "under constant watch."

Although the nurse who attended the defendant upon his arrival at the hospital until the end of her shift at 11:00 P.M. was aware that the defendant was under arrest and in police custody, she did not know why. In caring for the defendant, she asked him to allow her to draw his blood and told him that the "treating physician had ordered blood work for medical purposes." The defendant refused to allow his blood to be drawn despite being advised that "blood work" was necessary because there was a possibility that he had sustained "a cardiac contusion, internal bleeding or other serious injury." Even after a physician spoke with him, the defendant remained steadfast in his refusal to provide medical personnel with a sample of his blood. As found by the judge, hospital records reflect that this nurse asked the defendant on three occasions to consent "to having his blood drawn" and that he refused each of her requests.

At 11:00 P.M., a second nurse came on duty and assumed responsibility for the defendant's care. This nurse "did not recall the presence of police officers." It was about midnight when this second nurse asked the defendant "to consent to having blood drawn" while telling him that his blood "would not be tested for alcohol." The defendant again refused to allow his blood to be drawn.

2. *The judge's decision.* Based upon the evidence before him, the judge concluded:

> "The repeated refusal by [the defendant] to allow his blood to be drawn would be strong consciousness of guilt evidence. The medical requests were made independently of the prior request by [O]fficer Martin. However, this court feels constrained to prohibit the admission of this proffered evidence. The defendant had exercised his right pursuant to G. L. c. 90, § 24(1)(e) and (f) to refuse the police request for a blood sample. He remained in police custody, under constant watch, during his stay at the hospital.

> "The breadth of our [S]tate protection against self-incrimination as held in *Opinion of the Justices to the Senate*, [412 Mass. 1201 (1992),] and its progeny support this conclusion. As a matter of law, one could not safely determine that the defendant was not relying on his statutory and constitutional rights while he remained in police custody."

3. *The statute.* As here pertinent, the first two sentences of G. L. c. 90, § 24(1)(e), as appearing in St. 1994, c. 25, § 5, read:

"In any prosecution for a violation of [offenses set out in § 24(1)(*a*)], evidence of the percentage, by weight, of alcohol in the defendant's blood at the time of the alleged offense, as shown by chemical test or analysis of his blood . . . shall be admissible and deemed relevant to the determination of the question of whether such defendant was at such time under the influence of intoxicating liquor; provided, however, that if such test or analysis was made by or at the direction of a police officer, it was made with the consent of the defendant, the results thereof were made available to him upon his request and the defendant was afforded a reasonable opportunity, at his request and at his expense, to have another such test or analysis made by a person or physician selected by him; and provided, further, that blood shall not be withdrawn from any party for the purpose of such test or analysis except by a physician, registered nurse or certified medical technician. Evidence that the defendant failed or refused to consent to such test or analysis shall not be admissible against him in a civil or criminal proceeding, but shall be admissible in [actions not here relevant]."

We read the statutory exclusion of evidence in G. L. c. 90, § 24(1)(*e*), to be limited to a defendant's refusal to take tests to determine the alcohol level of his blood when requested by the police or other State actors — in essence incorporating the State action requirement and protections of art. 12 of the Massachusetts Declaration of Rights. Neither c. 90, § 24(1)(*e*), nor art. 12 has ever been interpreted to apply to private action. If such an extension of the right against self-incrimination were intended here, we think the Legislature would have so provided. Compare G. L. c. 12, § 11H, inserted by St. 1979, c. 801, § 1 ("Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, . . . with the exercise or enjoyment by any other person or persons of rights secured by the constitution . . .").

The text of § 24(1)(*e*), is not a model of clarity. It begins with the expansive statement: "In any prosecution for a violation of paragraph (a), evidence of the percentage, by weight, of alcohol in the defendant's blood . . . as shown by chemical test or analysis of his blood or as indicated by a chemical test or analysis of his breath, shall be admissible and deemed relevant to the determination of the question of whether such defendant was . . . under the influence of intoxicating liquor." The statute then provides this caveat: "if *such test* or analysis was made by or at the direction of a police officer, it must be made with the consent of the defendant . . ." (emphasis supplied). *Ibid.* The statute then addresses the defendant's rights to receive the results of such test or analysis and to request his own tests or analysis. Blood is not to be drawn for such tests or analysis except by medical professionals or technicians.

To resolve the question presented in this case, the following sentence in G. L. c. 90, § 24(1)(*e*), is critical: "Evidence that the defendant failed or refused to consent to such test or analysis shall not be admissible against him in a civil or criminal proceeding, but shall be admissible in any action by the [R]egistrar" to revoke his driver's license. We read the provision precluding admission of refusal evidence as applicable only to the refusal to consent to "such" test or analysis to determine the alcohol level of the defendant's blood made by or at

the direction of the police or other State actors.[2] We are not aware of any cases imposing the G. L. c. 90, § 24(1)(e), exclusion of refusal evidence involving persons other than State actors, or those acting on their behalf.

The statutory language incorporates the State constitutional privilege against self-incrimination set out in art. 12 of the Massachusetts Declaration of Rights. As explained in an opinion addressing a proposed amendment to G. L. c. 90, § 24(1)(e), that would have allowed evidence of the refusal to take a breathalyzer test to be admitted in criminal proceedings and certain actions of the Registrar, "[t]he proposed statute . . . uses the threat of adverse testimonial evidence as a coercive tool to compel submission to a breathalyzer test." *Opinion of the Justices*, 412 Mass. 1201, 1211 (1992). The proposed amendment would "therefore violate the privilege against self-incrimination of art. 12." *Ibid.*

The State action requirement of art. 12 is well established. It is governmental, not private, compulsion that is prohibited. See, e.g., *Commonwealth* v. *O'Laughlin*, 446 Mass. 188, 205 (2006) (in accordance with art. 12, "testimonial evidence of a defendant's refusal to comply with a police request may not be admitted against him"); *Commonwealth* v. *Irwin*, 72 Mass. App. Ct. 643, 651 (2008); Brodin & Avery, Massachusetts Evidence § 5.14.2, at 257 (8th ed. 2007).

In cases involving the performance by physicians or other medical personnel of medical tests or procedures for medical purposes, this court has consistently declined to find State action even when the police have an interest in the outcome of those tests or procedures. In *Commonwealth* v. *Russo*, 30 Mass. App. Ct. 923 (1991), an intoxicated driver who had been badly injured in a head-on collision was taken to a hospital. "Blood was drawn from Russo by medical personnel at the hospital in connection with his treatment. The police did not request or direct testing of the defendant's blood." *Id.* at 925. This court held as follows: "Extraction of blood without a person's consent may constitute an unreasonable search . . . but only when it is done at government direction." *Ibid.* See *Commonwealth* v. *Storella*, 6 Mass. App. Ct. 310 (1978) (bullet removed from defendant and given to police officers); *Commonwealth* v. *St. Hilaire*, 43 Mass. App. Ct. 743 (1997) (no State action where blood drawn from defendant for medical reasons, even though he had been involved in serious accident and was suspected of driving while intoxicated and police helped restrain him for blood test). Even when the police are present and may seek to use the medical evidence in a subsequent prosecution, this court has not found the actions of the medical professionals to constitute State action where the medical personnel are acting for medical reasons. See, e.g., *Commonwealth* v. *Storella, supra*; *Commonwealth* v. *St. Hilaire, supra*.

In sum, neither G. L. c. 90, § 24(e)(1), nor art. 12 renders inadmissible evidence of the defendant's refusal to consent to a blood test requested by medical professionals for medical purposes, even where the defendant is in custody and police may have an interest in the results of the tests. The request here was made by private parties; it was not made by State actors or those acting at their behest and was made for medical reasons.

---

[2]The Commonwealth similarly argues that the reference to "such test" applies only to the test or analysis of the defendant's blood to determine "the percentage, by weight, of alcohol . . . ." See G. L. c. 90, § 24(1)(e).

*Conclusion.* It follows from all that we have said that the order of August 31, 2006, allowing the defendant's motion to exclude from evidence his refusal to provide medical professionals with a sample of his blood is reversed, and the matter is remanded to the trial court for further proceedings on the pending complaint.

*So ordered.*

*Rachel J. Eisenhaure,* Assistant District Attorney, for the Commonwealth.

*Dana Alan Curhan* (*Brad P. Bennion* with him) for the defendant.