## Commonwealth *vs.* David J. O'Brien.

Plymouth. April 3, 2001. - July 13, 2001.

Present: Marshall, C.J., Greaney, Spina, Sosman, & Cordy, JJ.

*Protective Custody. Evidence,* Right to obtain evidence, Blood alcohol test. *Bail. Motor Vehicle,* Operating under the influence.

On the Commonwealth's appeal from the dismissal of a charge of operating a motor vehicle while under the influence of liquor (second offense), the defendant failed to demonstrate that deviations from the requirements of G. L. c. 111B, § 8, impeded his right to an independent medical examination pursuant to G. L. c. 263, § 5A, and this court vacated the dismissal of the charge. [617-623]

Complaint received and sworn to in the Brockton Division of the District Court Department on June 11, 1999.

The case was heard by *Gregory R. Baler,* J., on a motion to dismiss.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jeffrey S. Beckerman,* Assistant District Attorney, for the Commonwealth.

*William J. Phelan* for the defendant.

Sosman, J. A judge in the District Court allowed the defendant's motion to dismiss the charge of operating a motor vehicle while under the influence of liquor (second offense). The judge concluded that the defendant's right to an independent medical examination (G. L. c. 263, § 5A) had been impeded by the police when they held him in protective custody without adhering to all of the requirements of the protective custody statute (G. L. c. 111B, § 8). The Commonwealth appealed, and we transferred the case to this court on or own motion. We conclude that the defendant failed to demonstrate that the deviations from the requirements of G. L. c. 111B, § 8, impeded his right to an independent medical examination. We therefore

vacate the dismissal of the charge and remand the matter to the District Court for further proceedings.

1. *Facts.* The following facts were presented at the evidentiary hearing.[1] Shortly after 2 A.M. on June 11, 1999, Whitman police Officer Sean J. Reynolds observed a vehicle being driven erratically by the defendant. Reynolds pulled the defendant over, and noticed various signs of intoxication while speaking with him. Reynolds radioed for backup, and another officer (Robert Stokinger) arrived shortly thereafter. Stokinger confirmed Reynolds's observations of the defendant, and asked the defendant to perform a series of field sobriety tests. When the defendant failed to perform satisfactorily on any one of four tests, Stokinger concluded that the defendant was intoxicated. The defendant was arrested and taken to the Whitman police station. The defendant's car was towed from the scene.

The defendant was booked at 2:23 A.M. He gave a home address of 159 Andrew Lane in Hanson. He had $145.31 on his person. The defendant was advised that he had a right to take a breathalyzer test. The defendant declined, but indicated that he did want to have a blood test. He was then allowed to use the telephone. The defendant placed two telephone calls, but he was unable to reach anyone. After those two unsuccessful telephone calls, the defendant was placed in a cell to await the arrival of the bail commissioner.

At approximately 3:30 A.M., the bail commissioner came to the station and set bail at $25 cash. The defendant posted that amount, and again used the telephone seeking to locate someone who could give him a ride. He was again unable to reach anyone. The police advised the defendant that he had to get someone to come pick him up or they would continue to hold him.[2] The defendant made several more telephone calls in an attempt to arrange a ride, but was again unsuccessful. After the

---

[1]The motion judge did not issue findings of fact. While the defendant disputed whether he was intoxicated at the time of his arrest, the sequence of events surrounding his arrest, bail, and placement in protective custody were not disputed.

[2]If there is no suitable (and sober) person to whom the intoxicated detainee can be released, the town has a policy of holding the intoxicated person in protective custody. The officers were of the view that the defendant was still intoxicated as of 3:35 A.M., and that he could not be safely released on his

last such attempt, the defendant stated, "Forget it, no one is going to be up now."

At 3:41 A.M., the defendant was placed in protective custody. The police did not, at that time, advise the defendant of his right to a breathalyzer test. See G. L. c. 111B, § 8. Nor did they notify the nearest detoxification facility to ascertain whether services were available for the defendant. *Id.* They did, however, make a written record of the protective custody detention, as required by the statute.[3] *Id.*

After being placed in protective custody, the defendant was returned to a cell, where he fell asleep. The defendant was released from the Whitman police station at 6:30 A.M.

2. *Right to independent medical examination, G. L. c. 263, § 5A.* The defendant argues, and the motion judge held, that his right to an independent medical examination, G. L. c. 263, § 5A, was wrongfully frustrated by the police. The statute provides:

> "A person held in custody at a police station or other place of detention, charged with operating a motor vehicle while under the influence of intoxicating liquor, shall have the right, at his request and at his expense, to be examined immediately by a physician selected by him. The police official in charge of such station or place of detention, or his designee, shall inform him of such right immediately upon being booked, and shall afford him a reasonable opportunity to exercise it. . . ."

*Id.* Once the police inform a defendant of his right to an

own. The officers noted that the defendant's home was some distance away, and that there was no public transportation available. He could not drive safely, and his car had already been towed. He had no means to get home, other than by attempting to walk, alone, late at night, in an intoxicated condition, all the way to Hanson. In the officers' view, it would not have been safe to allow the defendant to attempt that feat.

[3]The statute requires that the written entry reflect "whether the person held in custody exercised his right to take a breathalyzer test." G. L. c. 111B, § 8. The form for the defendant's protective custody indicated that he did not exercise that right. The officers acknowledged that they had not separately advised the defendant of his G. L. c. 111B, § 8, right to a breathalyzer test. The entry to the effect that the defendant had not exercised his G. L. c. 111B, § 8, right to a breathalyzer test was apparently based on his earlier declination of a breathalyzer test at the time of booking.

independent medical examination under § 5A, the police "have no obligation to help him in exercising that right." *Commonwealth* v. *King*, 429 Mass. 169, 172 (1999), and cases cited. While there is no requirement that the police assist a defendant in obtaining an independent examination, they "may not prevent or hinder the defendant's reasonable and timely attempt to obtain such an examination." *Commonwealth* v. *Hampe*, 419 Mass. 514, 520 (1995), citing *Commonwealth* v. *Rosewarne*, 410 Mass. 53, 55 (1991).

Because the evidence to be obtained by way of an independent examination (i.e., a blood alcohol content determination based on a blood test) must be obtained promptly in order to be of any use, we have held that, if a defendant has expressed a desire for an independent examination, improperly obstructing a defendant's right to a prompt bail hearing simultaneously obstructs his rights under § 5A. See *Commonwealth* v. *King*, *supra* at 173; *Commonwealth* v. *Hampe*, *supra* at 521; *Commonwealth* v. *Rosewarne*, *supra* at 54-55. If the defendant cannot get admitted to bail, he cannot obtain a blood test; and if he is not released promptly, a later blood test produces no relevant evidence. Thus, when a defendant indicates that he wishes such an independent test, delay in setting bail operates to frustrate his rights. See *Commonwealth* v. *King*, *supra* (bail magistrate's refusal to come to jail, after defendant made known his desire for independent examination, frustrated defendant's § 5A rights); *Commonwealth* v. *Hampe*, *supra* at 516-517, 521 (police failed to telephone bail commissioner despite defendant's statement that he wanted independent examination); *Commonwealth* v. *Rosewarne*, *supra* (if police deterred defendant's girl friend from posting bail for him, defendant's § 5A rights would be violated where defendant announced his intention to seek independent test).

Here, there was no delay in setting the defendant's bail. The bail commissioner arrived a little over one hour after the defendant's booking, and promptly set bail at $25. The police did not prevent, obstruct, or drag out the process of setting and posting bail, and were prepared to release the defendant within minutes after the bail commissioner had arrived.

The only additional requirement imposed by the police was that the defendant arrange for someone to come get him. In the

circumstances, the requirement was eminently reasonable, and was imposed for the defendant's (and the public's) safety. We have expressly noted that nothing in § 5A requires the police to "give [the defendant] the keys to his vehicle and allow him to drive off if he is not in a fit condition to do so." *Commonwealth* v. *King, supra* at 175 n.4. "[N]othing we say here requires police to allow a defendant in circumstances of apparent intoxication to resume the operation of his or her motor vehicle. The release of the defendant when other means of transportation, such as the assistance of a friend who will operate the defendant's vehicle or his own, or of public transportation (should it be available) may be appropriate." *Commonwealth* v. *Hampe, supra* at 521 n.6.

Here, the officers were of the view that the defendant was not in a fit condition to drive, nor was he in condition to navigate his way home to the next town on foot, alone, at 3:30 A.M.[4] The police gave the defendant the telephone to make alternative arrangements three times (during booking, after bail had been posted, and again prior to placing him in protective custody). The defendant makes no claim that the police interfered in any way with his attempts to contact friends or relatives to arrange for some form of safe transportation. His lack of success in making such arrangements was through no fault of the officers.

The defendant argues that the officers failed to adhere to two requirements of the protective custody statute, that his placement in protective custody was therefore wrongful, and that his wrongful detention operated to frustrate his § 5A right to obtain an independent examination. In other cases involving wrongful delay in setting a defendant's bail, we have refused to allow the

---

[4]Nor would it be reasonable to conclude that the defendant would have been able to walk, by himself, to a medical facility and obtain his desired blood test. On the defendant's motion to dismiss, it was the defendant's burden to show that police action or inaction had the effect of frustrating his ability to get a prompt blood test. Having been unable to raise any form of assistance through repeated telephone calls, it appears doubtful that, had the defendant been released to proceed on his own without any means of transportation, the defendant would have found his way to a medical facility and obtained such a test. Cf. *Commonwealth* v. *King*, 429 Mass. 169, 171, 173 (1999) (defendant's father at station to pick defendant up once bail set); *Commonwealth* v. *Rosewarne*, 410 Mass. 53, 54-55 (1991) (defendant's girl friend attempted to post defendant's bail).

Commonwealth to justify a defendant's continued detention as "protective custody." See *Commonwealth* v. *King, supra* at 174; *Commonwealth* v. *Hampe, supra* at 521-522. In both of those cases, the Commonwealth's invocation of "protective custody" was a posthoc rationalization for failure to set bail. In the absence of any indication that the defendant had, at the time, actually been placed in protective custody, we rejected such belated alternative justification for continued detention without bail.[5] *Id.* Here, the defendant does not challenge that he was, in fact, taken into protective custody after the prompt setting and posting of bail. The written record of protective custody required by the statute (G. L. c. 111B, § 8) was made at the time. Those records of the Whitman police, reflecting that the defendant was taken into protective custody at 3:41 A.M., were placed into evidence and not challenged. We are not confronted here with some other form of wrongful detention that is, after the fact, being justified by reference to protective custody.

Rather, the defendant points to two specific aspects of the protective custody statute that were not followed by the police.[6] First, he argues that, at the time he was placed in protective custody, he was not advised of his right to take a breathalyzer test. See G. L. c. 111B, § 8. Of course, the defendant had, at the time of booking on the charge of operating a motor vehicle while under the influence of liquor, been offered a breathalyzer test and had declined it. We are not dealing with a defendant who was never, at any time, offered a breathalyzer test. We are dealing only with a failure to reoffer the same test that the defendant had declined one hour earlier. The defendant must

---

[5]In *Commonwealth* v. *King, supra*, the rationalization was further weakened by the fact that the defendant's father had come to the station to retrieve his son. Whatever that defendant's condition, there was an adult relative present who was prepared to take responsibility for him.

[6]In both *Commonwealth* v. *King, supra* at 174, and *Commonwealth* v. *Hampe*, 419 Mass. 514, 521-522 (1995), we noted that the statutory procedures for protective custody had not been followed. The complete absence of any degree of compliance with G. L. c. 111B, § 8, confirmed that the detention of those defendants had not, at the time, been for purposes of protective custody. Neither case stands for the proposition that a defendant, who is held in protective custody, suffers an automatic deprivation of his G. L. c. 263, § 5A, rights whenever the police fail to follow any one of the procedural requirements for protective custody.

show that this somehow frustrated his ability to get the test he actually wanted (the blood test), a showing that could only be made if the defendant produced evidence suggesting that, had the breathalyzer test been reoffered, he would have taken it, passed it, and thus been released from protective custody in time to obtain a usable blood test.[7] The defendant offered no such evidence. There is nothing in this record to suggest that the defendant would have changed his mind and taken a breathalyzer test on a repeat offer, and nothing to suggest that the results of such a test would have required his release from protective custody.

The other failure the defendant asserts is that the police did not notify the nearest detoxification facility. When a person is taken into protective custody, police are to contact the nearest "facility" (defined as a place "providing services especially designed for the detoxification of intoxicated persons or alcoholics," G. L. c. 111B, § 3), and ascertain whether "suitable treatment services are available." G. L. c. 111B, § 8. If such services are available, the police must transport the person to the detoxification facility. *Id.* The apparent purpose of this requirement is that persons detained in protective custody be cared for in a setting designed to treat the intoxication that has rendered them incapacitated, rather than be kept in a jail cell. This requirement also underscores that such persons are not under arrest, but are merely in need of treatment and temporary protection. See G. L. c. 111B, § 8 (person held in protective custody "shall not be considered to have been arrested or to have been charged with any crime"); *Commonwealth* v. *O'Connor*, 406 Mass. 112, 120 n.7 (1989) (placing person in protective custody is seizure but not arrest); *Commonwealth* v. *St. Hilaire*, 43 Mass. App. Ct. 743, 748-749 (1997) (same). See also *Veiga* v. *McGee*, 26 F.3d 1206, 1212 (1st Cir. 1994) ("In place of punishment, Chapter 111B provides for the treatment and rehabilitation of alcoholics and evidences a concern for the health and safety of persons incapacitated by the effects of alcohol").

Here, the police did not contact any facility, and thus failed

[7]A person is presumed not intoxicated, and therefore must be released from protective custody, if the breathalyzer test indicates that the percentage of alcohol in his blood is "five one hundredths or less." G. L. c. 111B, § 8.

to comply with that portion of G. L. c. 111B, § 8. Again, however, we are considering whether any failure on the part of the police operated to obstruct the defendant's obtaining an independent examination or blood test under G. L. c. 263, § 5A. No evidence was presented to show that there was any nearby detoxification facility that could have or would have admitted the defendant at 3:30 A.M.,[8] let alone any evidence suggesting that the defendant could have obtained the desired blood test at such a facility. It would be sheer speculation to posit that, had the police contacted a nearby facility, that contact would have ultimately led to the defendant's obtaining a timely blood test to determine his blood alcohol content. While we do not condone the police officers' failure to comply with this important aspect of the protective custody statute, we cannot conclude that that failure had any bearing on the defendant's ability to obtain a timely blood test.

Finally, the defendant argues that there was an insufficient basis for holding him in protective custody, as he denies that he was intoxicated at the time.[9] To take someone into protective custody, officers need only probable cause to believe that the person is "incapacitated" within the meaning of G. L. c. 111B, § 3. *Commonwealth* v. *O'Connor, supra* at 120 & n.6. *Commonwealth* v. *St. Hilaire, supra* at 747. The statute defines "incapacitated" as "the condition of an intoxicated person who, by reason of the consumption of intoxicating liquor is (1) unconscious, (2) in need of medical attention, (3) *likely to suffer or cause physical harm or damage property*, or (4) disorderly" (emphasis added). G. L. c. 111B, § 3. The officers testified to the signs of significant intoxication that they had observed at

---

[8] We cannot presume that space at such facilities is readily available. See, e.g., *Ringuette* v. *Fall River*, 888 F. Supp. 258, 265-266 (D. Mass. 1995) (detoxification facility rarely had any beds available and generally had wait list of seven days; police failure to contact facility therefore could not have caused protective custody detainee's injuries).

[9] This argument was not raised directly in the defendant's motion below, but was arguably alluded to during the defendant's cross-examination of the officers. The motion as filed argued only that the defendant had been denied a prompt bail hearing. At the evidentiary hearing, the defendant's theories as to why his detention had been improper expanded to include alleged improprieties in his protective custody.

the scene of the arrest.[10] In their view, the defendant was still intoxicated one and one-half hours later, such that, if released unattended, he posed a danger to himself. This would seem sufficient probable cause to believe that the defendant was incapacitated.

However, Officer Stokinger acknowledged that, during booking, the defendant was able to understand and respond to booking questions. He also acknowledged that the defendant had, when offered the telephone, dialed the telephone himself. Based on the evidence that the defendant could respond to booking questions, the motion judge observed that "maybe a [protective custody] wasn't necessary." This is not, contrary to the defendant's present contention, a finding by the judge that there was no probable cause to detain the defendant in protective custody. On his motion to dismiss, the defendant had the burden to show that his § 5A rights were impeded. The judge's remark that protective custody "maybe" was not "necessary" does not suggest that the defendant had met his burden of showing a wrongful detention that had prevented him from getting his desired § 5A examination.[11]

There being no impairment of the defendant's § 5A rights, the dismissal of the complaint is hereby vacated and the matter is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

---

[10]The erratic driving observed by Officer Reynolds consisted of the defendant taking a sudden left-hand turn that nearly hit the right curb, braking suddenly to avoid hitting an island, crossing over the center line on at least two occasions, and failing to signal a turn off a rotary. When stopped, the defendant had slurred speech, red and glassy eyes, and a strong odor of alcohol. On field sobriety tests, the defendant was unable to recite the alphabet from J to T, unable (on two attempts) to stand on one leg, missed every one of nine steps on a heel-to-toe walk, and missed his nose every time he attempted to touch his nose with the tip of his finger.

[11]Of course, the factual basis for protective custody asserted by the officers overlaps with the Commonwealth's evidence in support of the charge of operating a motor vehicle while under the influence of liquor — i.e., their observations that the defendant was intoxicated at the time that he was driving the car and that his intoxication was still evident one and one-half hours later when the defendant posted bail. Whether the defendant was intoxicated is the issue that will be decided by the jury at trial.