# United States Court of Appeals
## For the First Circuit

No. 25-1651

TYLER JON TAKER,

Plaintiff, Appellant,

v.

TODD BLANCHE, in the official capacity as Acting Attorney
General of the United States; ROBERT CEKADA, in the official
capacity as Director of the Bureau of Alcohol, Tobacco, Firearms
and Explosives; AARON M. FREY, in the official capacity as
Attorney General of Maine; COLONEL WILLIAM G. ROSS, in the
official capacity as Colonel of the Maine State Police; MARC
HAGAN, individually and in the official capacity as Chief of the
Topsham Police Department,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Montecalvo, Circuit Judges.

Kyle Singhal, with whom Hopwood & Singhal PLLC was on brief,
for appellant.
Joshua K. Handell, Department of Justice, with whom Michael
S. Raab, Department of Justice, Craig M. Wolff, Acting United
States Attorney, Lindsay B. Feinberg, Appellate Chief, and James
D. Concannon, Assistant United States Attorney, Brett A. Shumate,
Assistant Attorney General, were on brief, for appellees Todd
Blanche and Daniel Patrick Driscoll.

Paul E. Suitter, Assistant Attorney General of Maine, with whom Heather A. Francis, Assistant Attorney General of Maine, Aaron M. Frey, Attorney General of Maine, and Thomas A. Knowlton, Deputy Attorney General, were on brief, for appellees Aaron M. Frey and William G. Ross.

John J. Wall III, with whom Monaghan Leahy, LLP was on brief, for appellee Marc Hagan.

Julia B. MacDonald, Pierce Atwood LLP, Douglas N. Letter, Shira Lauren Feldman, Tess M. Fardon, Brady Center to Prevent Gun Violence, William T. Clark, Leigh Rome, and Giffords Law Center to Prevent Gun Violence on brief for Maine Gun Safety Coalition, et al. as amici curiae supporting appellees.

———————————

June 22, 2026

———————————

BARRON, **Chief Judge**.  This appeal chiefly concerns Tyler Jon Taker's ("Taker") claims for declaratory and injunctive relief from federal and state statutes that prohibit persons with certain prior convictions or who are subject to a protective order from possessing a firearm.  He alleges in these claims that the statutes at issue violate his federal constitutional right to purchase and possess a firearm.  Taker's appeal also concerns, however, his claim for damages for what he alleges was the unconstitutional denial of a permit that he sought under Maine law to allow him to carry a concealed firearm.

The United States District Court for the District of Maine dismissed Taker's suit for failure to state a claim on which relief may be granted, and he now appeals from that ruling.  We conclude that Taker has failed to plausibly allege that he has standing under Article III of the United States Constitution to bring his claims for declaratory and injunctive relief.  We further conclude that his claim for damages must be dismissed on qualified immunity grounds.  We therefore affirm in part and vacate and remand in part.[1]

---

[1]  We acknowledge and thank the amici curiae for their submission in this matter.  The following amici submitted one brief in support of the appellees: Maine Gun Safety Coalition; Maine Coalition to End Domestic Violence; Battered Women's Justice Project; National Network to End Domestic Violence; National Domestic Violence Hotline; Jewish Women International; Ujima, The National Center on Violence Against Women in the Black Community;

**I.**

On March 22, 2024, a state court in Maine entered an Order for Protection from Abuse ("the PO") against Taker, who is a resident of Topsham, Maine. Taker agreed to the PO, which prohibited him from possessing any firearm described in 17-A M.R.S. § 2(12-A), as well as "all muzzle-loading firearms, bows, and crossbows; and other dangerous weapons" defined in 17-A M.R.S. § 2(9). The state court also ordered Taker to relinquish all such firearms and weapons immediately upon service of the PO.

The PO was "effective immediately." It provided that it would remain "in full force and effect" until March 22, 2026, "unless earlier modified or vacated by order of court."

On July 15, 2024, Taker delivered a Concealed Handgun Permit Application to the Topsham Police Department pursuant to a Maine statute -- 25 M.R.S. § 2003. That same day, a Topsham Police Department employee called Taker to inform him that, due to the PO, his application for a concealed handgun permit would be denied.

On July 24, 2024, Taker's attorney received Taker's permit application in the mail with a Post-it note. That note stated: "Returned - CWP [Concealed Weapons Permit] will not be approved due to protective order."

---

Asian Pacific Institute on Gender-Based Violence; Brady Center to Prevent Gun Violence; and Giffords Law Center to Prevent Gun Violence.

On February 4, 2025, Taker filed his operative complaint in the federal suit that gives rise to this appeal.[2]  He named as defendants Pamela Bondi, in the official capacity as then-Attorney General of the United States; Marvin G. Richardson, in the official capacity as then-Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; Aaron M. Frey, in the official capacity as Attorney General of Maine; Colonel William G. Ross, in the official capacity as Colonel of the Maine State Police; and Marc Hagan, individually and in the official capacity as Chief of the Topsham Police Department.

The complaint alleges that Taker "desires to purchase and possess firearms for self-defense within the home and outside the home, including by open carry and concealed carry."  It further alleges that he is barred from doing so as a matter of federal law by 18 U.S.C. § 922(d)(1), 922(d)(8)(B)(ii), 922(g)(1), and 922(g)(8)(C)(ii), and as a matter of state law by 15 M.R.S. §§ 393(1)(A-1)(2), 393(1)(D)(2), and 394(2), and 25 M.R.S. § 2003(2)(A-2) and (B).[3]

_____

[2] The original complaint was filed on November 1, 2024.
[3] On appeal, Taker challenges 18 U.S.C. § 922(g)(1), 922(g)(8)(c)(ii) and 15 M.R.S. § 393(1)(A-1)(2), (1)(D)(2). 18 U.S.C. § 922(g)(1) prohibits anyone "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" from "ship[ping] or transport[ing] in interstate or foreign commerce, or possess[ing] in or affecting commerce, any firearm or ammunition" or from receiving the same. 18 U.S.C. § 922(g)(8)(c)(ii) prohibits the same for any person

- 5 -

The complaint goes on to allege that these federal and state statutes prohibit Taker from possessing a firearm either "because of a single felony marijuana conviction" that was entered against him in 2012 for possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841, or because he is subject to a protective order. The complaint then alleges that, by so prohibiting him from possessing a firearm, these federal and state statutes violate his "fundamental, individual right to keep and bear arms," which the Second Amendment of the United States Constitution guarantees and is incorporated against the states by the Due Process Clause of the Fourteenth Amendment.

The complaint does not allege that the PO itself is similarly unconstitutional or otherwise invalid. For relief, the complaint requests a declaratory judgment stating that the statutes at issue violate Taker's Second and Fourteenth Amendment

---

subject to a court order that "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child." Under Maine law, "a person may not own, possess or have under that person's control a firearm, unless that person has obtained a permit under this section, if that person [h]as been convicted of committing . . . [a] crime under the laws of the United States that is punishable by imprisonment for a term exceeding one year," 15 M.R.S. § 393(1)(A-1)(2), or if that person "is subject to an order of a court of this State or another jurisdiction that restrains that person from harassing, stalking or threatening an intimate partner . . . of that person or a child of that intimate partner," "issued after a hearing," that, "[b]y its terms, explicitly prohibits the use, attempted use or threatened use of physical force against an intimate partner or a child," id. § 393(1)(D)(2).

- 6 -

rights and an injunction enjoining the relevant defendants from enforcing those statutes against him.

In addition to these claims, the complaint alleges that Hagan "personally rejected (or, alternatively, returned without approval)" Taker's application for a concealed-carry firearm permit or "personally directed one of his subordinates to reject (or, alternatively, to return without approval)" that permit application. Taker's complaint then alleges that when Hagan returned Taker's then-rejected permit application, "Hagan knew or should have known, in light of the United States Supreme Court's decision in N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), that failing to approve the [a]pplication was a violation of [p]laintiff's clearly established constitutional rights." On that basis, the complaint seeks damages against Hagan, in his individual capacity, under 42 U.S.C. § 1983 for the denial of Taker's application for the concealed-carry permit.

The defendants filed motions on April 4, 2025, to dismiss the operative complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Ross and Frey separately moved to dismiss the complaint on jurisdictional grounds pursuant to Federal Rule of Civil Procedure (12)(b)(1). They did so on the ground that Taker lacked standing under Article III of the United States Constitution to bring any of his claims against them. Finally, Hagan moved to dismiss the complaint for failure to state

- 7 -

a claim under 42 U.S.C. § 1983 based on quasi-judicial and qualified immunity.

Taker opposed the motions to dismiss on May 5, 2025. He first argued that he had Article III standing to bring his claims against Ross and Frey because an order "affirming [p]laintiff's Second Amendment rights would redress his injury." He next claimed that there is no history or tradition of disarming individuals who either possess marijuana or "are subject to a protective order that was entered without a finding of dangerous behavior," as required by Bruen. 597 U.S. 1 (2022). And he argued that Hagan was not entitled to either quasi-judicial immunity or qualified immunity. With respect to qualified immunity, Taker argued that "the Supreme Court in Bruen clearly established [his] Second Amendment rights in Bruen, two years before his permit application was denied," such that "[a]ny 'reasonable official in the defendant's position would have known' that the statutes [p]laintiff challenges are unconstitutional in light of Bruen."

On July 8, 2025, the District Court granted the defendants' motions to dismiss the operative complaint. The District Court described Taker as alleging that the challenged statutes violate his federal constitutional rights because his felony drug-trafficking conviction was "dated and involved only non-violent marijuana trafficking and because the state court judge who issued the protective order never concluded that he poses

- 8 -

a threat of domestic violence."  In dismissing the claims, the District Court reasoned that, as a consequence of his felony drug trafficking conviction, Taker was not a law-abiding citizen.  The District Court further reasoned that, in light of United States v. Rahimi, 602 U.S. 680, 698 (2024), "to the extent that the law-abiding focus of Bruen has been refocused to emphasize legislative cause to perceive a category of persons as presenting a 'special danger of misuse,'" Taker's conviction was "neither a tame nor a technical felony" and was instead "a sufficient indicium of dangerousness to sustain the federal and states bans" on firearm possession as applied to him.  The District Court noted, too, that even assuming that the Supreme Court "would now conclude that a law barring nonviolent, marijuana-trafficker felons from possessing firearms comes within the Second Amendment," the record and arguments put forward by the defendants and amici showed that "the prohibition against firearm possession by felons is consistent with our Nation's historical tradition" and is therefore constitutional.

Accordingly, the District Court entered judgment dismissing Taker's claims.  In doing so, the District Court did not specify whether it was granting the motions for failure to state a claim under Rule 12(b)(6) or for lack of subject matter jurisdiction under Rule 12(b)(1).  It appears, however, that it

was ruling on the merits and so was dismissing the complaint for failure to state a claim.

Taker timely appealed.

## II.

We begin with Taker's claims for declaratory and injunctive relief. We focus on whether Taker has shown that there is subject matter jurisdiction as to these claims.

## A.

Article III of the United States Constitution limits the power of the federal courts to the adjudication of "Cases" or "Controversies." U.S. Const. art. III § 2, cl. 1. Unless a plaintiff suing in federal court has standing to bring his claims, there is no such "Case" or "Controversy," and the claims must be dismissed for lack of subject matter jurisdiction. See United States v. Texas, 599 U.S. 670, 675 (2023) ("Under Article III, a case or controversy can exist only if a plaintiff has standing to sue -- a bedrock constitutional requirement . . . .").

The three irreducible components of Article III standing are (1) an injury-in—fact (2) that is "fairly traceable to the challenged action of the defendant[s]" and not "the result of the independent action of some third party not before the court" and (3) is "likely" to be "redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (citation modified). Frey and Ross, the state defendants, challenge Taker's

- 10 -

standing to bring his claims against them for declaratory and injunctive relief on the ground that he cannot meet his burden to show that his asserted injury-in-fact would be redressed by that relief. They contend the reason is that the PO independently barred him from possessing a firearm when he filed his complaint challenging the state statutes that he contends unconstitutionally prohibited him from possessing such a weapon.

The federal defendants do not make that same redressability argument, but it is equally applicable to Taker's claims against them. Thus, because we have an independent obligation to ensure that Taker has Article III standing, see Summers v. Earth Island Inst., 555 U.S. 488, 499 (2009) ("[I]t is well established that the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties"), we must address the redressability issue as to not only Taker's claims against the state defendants but also as to his claims against the federal defendants.[4]

---

[4] The federal defendants separately argue that we should not reach the question of § 922(g)(8)'s constitutionality because (1) Taker would continue to be disarmed by § 922(g)(1) so invalidating § 922(g)(8) would not redress his injury and (2) his challenge to § 922(g)(8) would become moot by the time this Court could dispose of the appeal as the protective order was set to expire on March 22, 2026. But we need not address this contention because Taker has not plausibly alleged a redressable injury-in-fact as to his claim for declaratory and injunctive relief regarding that federal statute.

- 11 -

**B.**

"[A] party invoking a federal court's jurisdiction" bears the burden "to demonstrate standing" at each stage of litigation. Wittman v. Personhuballah, 578 U.S. 539, 543 (2016). As we are at the pleading stage, Taker must allege "sufficient factual matter to plausibly demonstrate his standing to bring the action." Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016). Our review is de novo. See Kerin v. Titeflex Corp., 770 F.3d 978, 981 (1st Cir. 2014) ("The existence of standing is a legal question, which we review de novo.").

Given that Taker's complaint describes his injury-in-fact as his inability to possess a firearm, we do not see how, while the PO remained in effect, the requested declaratory and injunctive relief would have redressed that injury. During that period, the PO itself would have barred Taker from possessing such a weapon and thus prevented his alleged injury from having been redressed even if the District Court had ordered the declaratory and injunctive relief that he sought in his complaint.

After all, Taker does not dispute that from the time that he filed his complaint to the time that the District Court entered final judgment, he was subject to the protective order. Nor is there any dispute that the order in and of itself prohibited him from possessing a firearm.

- 12 -

Moreover, Taker concedes that he "is <u>not</u> challenging the validity or even the constitutionality of the [PO]," even though during the period just described, the PO imposed an independent bar against his possession of a firearm. And Taker's complaint does not allege that he would obtain a firearm in violation of the PO if the state and federal statutes that he is challenging did not themselves prohibit him from doing so.

Finally, Taker did not address his standing in his opening brief on appeal even though the state defendants had argued below that, due to the PO, he had not plausibly alleged that he had standing to bring his claims because the PO prevented his alleged injury from being redressed by the relief that he sought. And while Taker does address his standing in his reply brief, arguments made only in such a belated way are ordinarily deemed waived. See <u>Waste Mgmt. Holdings, Inc.</u> v. <u>Mowbray</u>, 208 F.3d 288, 299 (1st Cir. 2000) ("We have held, with a regularity bordering on the monotonous, that issues advanced for the first time in an appellant's reply brief are deemed waived."). In any event, we are not persuaded by those arguments.

Taker's first argument is that "a victory in this case would relieve [him] of the risk of criminal punishments imposed by the statutes he challenges -- even if [he] could still be punished for violating the [PO] -- and that alone is enough relief to produce standing." But, according to his complaint, he agreed to

- 13 -

the terms of the PO and so agreed not to possess a firearm so long as it remained in effect. Nor does anything in his complaint indicate that, at the time of its filing, he would seek to obtain a firearm in violation of the PO if the state or federal laws that he is challenging did not bar him from possessing one.

Therefore, even if we were to assume that Taker faced the requisite risk of criminal punishment to bring a pre-enforcement challenge to any of the statutes in question during the time that he had agreed to abide by the terms of the PO, see Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159 (2014), we do not see how the elimination of that risk would redress the injury that he alleged. From all that his complaint alleges, the PO in and of itself would have prevented him from possessing a firearm and so, on its own, would have subjected him to the very injury that he seeks to redress by challenging the state and federal statutes at issue.

Taker separately argues that he has plausibly alleged that he has standing to challenge the statutes at issue -- notwithstanding the PO -- because, if he were successful in doing so, then he would have a "reason to oppose a protective order." He contends that is so because "his agreement to a protective order would then deprive him of a tangible right to possess a firearm, [giving him] a reason not to agree, should he find himself facing such a decision again."

Taker identifies no authority, however, that would permit him to rest his standing on as speculative a contingency as his being subject to a future protective order. Nor are we aware of any such authority. See City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983) ("Lyons' lack of standing . . . [rests] on the speculative nature of his claim that he will again experience injury as the result of that practice even if continued.").

Finally, Taker contends in his reply brief that "to the extent that the [PO's] firearm prohibition derives from the statutes challenged here, a victory in this case could, at the very least, call into question the validity of the [PO's] firearm prohibition, even if [he] ha[d] agreed to it." But he develops no argument that the invalidation of the statutes would call into question the PO's validity. Nor does he allege in his complaint that he intended, at any point (including following a successful challenge to the statutes at issue), to challenge the PO itself while it remained in effect.

Of course, the PO no longer stands in the way of Taker possessing a firearm. It expired on March 22, 2026. But the PO expired only after the District Court had issued the judgment that Taker is asking us to review. And, as we have just explained, Taker had not, as of that time, plausibly alleged that he had standing to bring his claims for declaratory and injunctive relief. Accordingly, there was no case or controversy at that time, which

means that the District Court's judgment granting the state and federal defendants' motions pursuant to Rule 12(b)(6) must be vacated and the claims for declaratory and injunctive relief dismissed for lack of Article III jurisdiction.

## III.

We also must address Taker's § 1983 claim for damages against Hagan, in which he challenges the denial of his concealed-carry permit application.[5] We see no Article III-based standing bar to this claim for damages, because when Taker filed his suit it was "likely" that the injury for which this claim sought redress would have been "redressed by a favorable decision." Lujan, 504 U.S. at 561 (quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 38 (1976)). Nonetheless, Hagan argues on appeal, as he did below, that Taker cannot sustain this § 1983 claim against him because Taker does not plausibly allege an underlying constitutional violation. And Hagan also argues that, in any event, he enjoys both quasi-judicial and qualified immunity. We agree he enjoys the latter and therefore need not address whether he enjoys the former. See Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 7 (1st Cir. 2014) ("We are not wedded to the district court's reasoning and may 'affirm the decision below on any ground

---

[5] Taker alleges that Hagan, "either personally or through an agent" denied his application for a concealed carry permit.

- 16 -

made manifest by the record.'" (quoting Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2017))).

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Reviewing de novo, see Starlight Sugar, Inc. v. Soto, 253 F.3d 137, 141 (1st Cir. 2001) ("Entitlement to the defense of qualified immunity is a question of law subject to de novo review."), we conclude that Hagan has shown that he is entitled to qualified immunity because Taker has not met his burden to "to identify controlling precedent or a consensus among persuasive authority that places the statutory or constitutional question beyond debate," Ablordeppey v. Walsh, 85 F.4th 27, 33 (1st Cir. 2023) (citation modified).

Even though Hagan asserted qualified immunity to the District Court, Taker does not attempt to show until his reply brief that the federal constitutional right that he alleges was violated was clearly established. See Waste Mgmt. Holdings, Inc., 208 F.3d at 299 ("We have held, with a regularity bordering on the monotonous, that issues advanced for the first time in an appellant's reply brief are deemed waived."). But, that problem aside, his argument in that respect in his reply brief is only

- 17 -

that "the Supreme Court in <u>Bruen</u> clearly established Taker's Second Amendment rights in <u>Bruen</u>, two years before his permit application was denied" and therefore "[a]ny 'reasonable official in the defendant's position would have known' that the statutes Taker challenges are unconstitutional in light of <u>Bruen</u>." (Citing <u>Alfano</u> v. <u>Lynch</u>, 847 F.3d 71, 75 (1st Cir. 2017)). And there are substantial differences between <u>Bruen</u> and this case, such as the fact that the appellants in <u>Bruen</u> were not subject to an agreed-to protective order and did not have a prior felony conviction. Thus, because we cannot see how the rights that Taker alleges in this claim to have been violated were clearly established, we affirm the District Court's dismissal of the damages claim against Hagan based on qualified immunity.

## IV.

We **affirm** the judgment below as to the damages claim against Hagan, **vacate** the judgment below as to the claims for declaratory and injunctive relief, and **remand** for the claims for declaratory and injunctive relief to be dismissed on jurisdictional grounds and therefore without prejudice.